Milligan, J.,
delivered the opinion of the court:
This case rests on an implied contract, and the claim made in the petition is divided into two parts or counts.
First. The claimant avers he is entitled to recover for seventy cords of wood, used by the Army of the United States in 1865, at the rate of $12 per cord, amounting to $840, and also for two and a half miles of cedar-post fence, used in a like manner for fuel, of the value of $600, making together $1,440.
Second. He claims compensation for the occupation by tbe United States troops of certain premises in Nebraska, about fifteen miles east of Cottonwood Springs, known as Gilman’s ranch, from the 3d day of October, 1864, to the 10th day of April, 1866, eighteen months and seven days, at the rate of $250 per month.
The proof establishes the occupation of the piemises by *522 United States troops for the time specified in the petition, and that the rent, in the estimation of the witnesses, was worth. $250 per month.
It also appears that the claimant, through his lawfully appointed attorney in fact, C. A. Baldwin, presented his claim for the rent now demanded in this suit to the War Department in the spring of 1870. It was there contested on the ground that $250 per month was exorbitant, and subsequently reduced to $100 per month, and on that basis settled by the Department, and the money, $1,823.33, paid over and receipted for by the claimant’s attorney, without protest or complaint at the time.
The facts connected with this part of the claimant’s cause of action, as set forth in the second count in the petiüon, bring' it directly under the rule established by this court in Kirkham & Brown’s Case, (4 C. Cls. R., p. 223.)
The contract sued on is admitted in the petition to be implied, and the payment according to the terms of the settlement, and receipt of the money without objection or protest, precludes the claimant from re-investigating the same matter in this court.
The other ground of action, as set forth in the first count of the claimant’s petition, rests on facts more equivocal than tho e offered to sustain the second count. It appears, however, that there were on the .premises when the troops went there, in October, 1864, from seventy-five to one hundred cords of wood, and the fencing, when reduced to cords, amounted to about one hundred and thirty-five or one hundred and forty cords. “All of the wood,” the.witness says, “and the greater part of the fence, were taken by troops in the service of the United States.”
This claim, like the other, was presented, to the Quartermaster’s Department for settlement, and rejected for want of “ definite official evidence to support it.”
As it now stands, the same difficulty surrounds it. It is xios-sible, 'perhaps, to approximate the number of cords, in the language of the witness, “ taken by the troopsbut there is no evidence which enables us to make a satisfactory estimate of the quantity of the fencing taken. The “ greater part,” as shown by proof, was taken; but how many cords that description of the quantity amounts to rests wholly in conjecture.
It is not for this or any other court to guess at the amount for which judgment in any case should be rendered. The first *523 duty of every claimant is, to make out bis case with reasonable certainty, and, failing in this, be must fail in tbe suit.
Datas it is manifest that the uncertainty wbicb surrounds this case can be removed by tbe one side or tbe other, avb have thought it best to remand tbe case for further evidence on both sides on tbe following points:
First. As to tbe actual quantity of wood used, including that vdiich was put up in cords, and also the fencing, with tbe fair and reasonable price therof?
Second. Whether or not the wood and fencing were taken and used by the troops of their own accord, and at their own pleasure, or under the orders of an officer lawfully authorized thereuntoj and, if so taken, were they regularly issued as fuel to the troops'?
Third. What number of troops were stationed at Gilman’s ranch during the time the wood and fencing are alleged to have been taken; and whether other fuel ivas regularly issued to said troops for the same period.
Judgment will be suspended on both branches of this case until the final hearing on the additional testimony directed to be taken.
Lourso, J., did not sit at the trial of this case and took no part in the decision.